IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LOYALTY IMPORTS RICHMOND LLC )<br>d/b/a LOYALTY TOYOTA; )<br>)<br>LOYALTY AUTOMOTIVE RICHMOND LLC )<br>d/b/a LOYALTY NISSAN; )<br>)<br>and LOYALTY SALES RICHMOND LLC )<br>d/b/a LOYALTY VOLKSWAGEN, )<br>)<br>      Plaintiffs, )<br>)<br>      v. )<br>)<br>LEXINGTON INSURANCE COMPANY, )<br>)<br>      Defendant. )<br>)<br>**Serve:** Corporation Service Company, )<br>     *Registered Agent* )<br>     251 Little Falls Drive )<br>     Wilmington, DE  19808 )<br>)<br>      And )<br>)<br>**Serve**: Counsel )<br>     Legal Department )<br>     Lexington Insurance Company )<br>     100 Summer Street )<br>     Boston, MA  02110 ) | Case No.   3:22cv286 |

## **COMPLAINT**

Plaintiffs, Loyalty Imports Richmond LLC, Loyalty Automotive Richmond LLC, and Loyalty Sales Richmond LLC (collectively, "Loyalty"), by counsel, set forth the following as their

1

Complaint seeking enforcement of an appraisal award against Lexington Insurance Company ("Lexington").

1. This is the second time these parties have been before the Court to resolve differences related to an insurance claim for damages to Loyalty's inventory of vehicles during a hailstorm on April 24, 2020. When the parties could not agree on the value of the loss, Lexington invoked the appraisal provision in the Policy. The parties were unable to agree upon a candidate to serve as the umpire for the appraisal process, and in accordance with the Policy, the parties petitioned the Court for the appointment of an umpire. By order dated September 22, 2021, the Court appointed Albert Michael Anderson as the umpire. *See,* Case 3:21-cv-00379-HEH, Document 25.

2. After more than six months of painstaking review of the value of loss to each of the more than 700 vehicles damages in the storm, Mr. Anderson presented his conclusions to the parties at a meeting on April 19, 2022.

3. In sum, Mr. Anderson concluded that the value of Loyalty's covered loss as a result of the hailstorm totaled $ 1,953,759.67.

4. The Policy contains a contractual limitations period which precludes Loyalty from bringing a legal action against Lexington more than two years after the loss. Under the present facts, this limitations provision would expire on April 24, 2022. Thus, Loyalty is filing this action the day after Mr. Anderson's report to the parties in order to preserve its right to enforce the umpire's appraisal award.

## Parties

5. Each of the Plaintiffs is a Virginia limited liability company with a principal place

of business in Chesterfield County, Virginia. The members of each of these limited liability companies are Virginia citizens.

6. Lexington Insurance Company is a Delaware corporation with its principal place of business in Boston, Massachusetts.

## Jurisdiction and Venue

7. This Court has jurisdiction over this dispute under 28 U.S.C. § 1332. Complete diversity exists between Counterclaim Plaintiff and Counterclaim Defendants, and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## The Policy

9. Plaintiffs are named insureds under an Auto Dealer's Inventory Protection Policy (the "Policy"), insurance Policy No. 41-LX-012124643-2, issued by Defendant Lexington Insurance Company ("Lexington"). A copy of the Policy is attached as Exhibit A.

10. The Policy covers Plaintiffs' automobile inventory at various locations. For purposes of this lawsuit the relevant locations (where vehicles were damaged by hail) are 2000 Walthall Center Drive Chester, Virginia 23831; 16300 Priority Way Chester, Virginia 23831; and 16301 Priority Way Chester, Virginia 23831 ("Loyalty Locations").

11. Lexington issued the Policy on December 4, 2019 for a term of one year, expiring on December 4, 2020.

12. The Policy provides coverage for direct physical damage to Loyalty's inventory, including damage caused by weather and hail. The Policy provides a total of over $27,000,000.00 in coverage limits for damage caused by weather to Loyalty's inventory located at the Loyalty Locations.

13. For covered losses, the Policy requires Lexington to pay the costs of conventional autobody repairs for damaged vehicles, less a discount of 25% on both parts and labor.

14. For covered losses, the Policy also includes coverage for costs associated with "paintless dent repair," an alternative method of repairing the types of dents and dings in vehicles that are caused by hailstorm.

15. The Policy also provides coverage for damaged vehicles that are not repaired, with such loss defined as the different between the value of the vehicle before and after the damage occurred, less a 40% discount.

16. The Policy also applies a separate deductible of $1,500.00 to each damaged vehicle.

17. Thus, the valuation of Loyalty's claim involves estimating the loss to each vehicle based on conventional auto body repairs and/or paintless dent repairs before applying the appropriate deductible and discount contemplated by the Policy.

**Facts**

18. On April 24, 2020, a hailstorm damaged at least 761 vehicles in Plaintiff's inventory ("Affected Vehicles") at the Loyalty Locations.

19. Repairing hail damage requires more than just fixing a scratch or dent on the surfaces of a vehicle. The modern-day vehicle comes equipped with a bevy of sensors for consumer safety. When a vehicle suffers even just cosmetic damage, proper repair necessarily includes recalibration of the vehicle's sensors, cameras, and/or other equipment. Failure to follow the manufacturer's guidelines for repairs to a damaged vehicle may result in malfunctioning equipment, invalidate warranties, and impair the safety and reliability of the repaired vehicle.

20. Following the hailstorm, Loyalty promptly submitted a claim for the damage to the Affected Vehicles under the Policy.

21. Lexington appointed DealerGuard, a third-party claims administrator, as its representative to adjust Loyalty's loss.

22. Lexington, through DealerGuard, engaged different vendors at different points in time to assist with the adjustment of Loyalty's loss.

23. Soon after the loss occurred, Loyalty made the Affected Vehicles available for inspection by Lexington, DealerGuard and their selected vendor(s).

24. In the months following the hailstorm, the parties engaged in the process of adjusting the loss by inspecting the Affected Vehicles and calculating the estimated costs of repair for each vehicle.

25. Unfortunately, the parties could not agree on the proper methodologies necessary to repair the hail damage to the various cars damaged during the hailstorm, nor could they reach agreement on the value of Loyalty's claim under the Policy.

26. On August 28, 2020, DealerGuard requested that Loyalty provide a proof of loss for its claim.

27. On September 21, 2020, based on the information available, Loyalty made its best effort to estimate its losses and submitted a proof of loss. The proof of loss identified the total damage to Loyalty's inventory as $4,189,534.57. After applying the appropriate deductibles and discounts under the Policy's valuation provisions, Loyalty identified a total covered loss of $1,752,995.79.

28. DealerGuard responded to Loyalty's proof of loss estimate by invoking the appraisal provision in the Policy.

29. Specifically, page 11 of the Policy provides, at **Section J. General Conditions, paragraph 3. Appraisal:**

> If we and you disagree on the value of the property or the amount of the "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss" pursuant to the terms, conditions and limitations contained herein. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding with regard to the value of the property or the amount of the "loss" only.   Each party will:
>    (a) pay its chosen appraiser; and
>    (b) bear the other expenses of the appraisal and umpire equally.

30. In accordance with the terms of the Policy, DealerGuard made a written demand for an appraisal of the loss and designated Mike Chamberlain of The Doan Group as its appraiser.

31. Loyalty designated Joe Thompson of TheBest Claims Solutions as its appraiser.

32. The two appraisers were not able to agree on a candidate to serve as the umpire, and Loyalty filed a Petition for Appointment of Umpire ("Petition") in the Circuit Court of Chesterfield County on May 7, 2021.

33. Lexington removed the Petition to this Court (Case No. 3:21-cv-00379-HEH), and following a hearing and the submission of information regarding potential umpire candidates, the Court appointed Albert Michael Anderson to serve as umpire in the appraisal process via an order dated September 22, 2021.

34. In the ensuing months, Mr. Anderson and his staff worked with the parties' respective appraisers to evaluate the loss. Mr. Anderson and his staff reviewed voluminous information provided by the parties and their appraisers regarding the vehicles in question as well as information from various vehicle manufacturers regarding appropriate repair methods to establish a valuation of the hail damage to the Affected Vehicles.

35. During the course of that process, Loyalty's appraiser, Joe Thompson, determined that Loyalty's original proof of loss may have understated the full amount of Loyalty's recoverable loss under the Policy. Accordingly, Loyalty reiterated its right to amend its proof of loss upon receipt of the umpire's decision. Loyalty reaffirmed this right in writing to Lexington by letter dated February 23, 2022. (A copy of that letter is attached as Exhibit B.)

36. Mr. Anderson presented his findings to the parties and their appraisers on April 19, 2022.

37. Mr. Anderson concluded that the total covered amount of Loyalty's loss as a result of the hailstorm is $1,953,759.67 ("Appraisal Award"). A copy of Mr. Anderson's final report is attached as Exhibit C.

38. Loyalty's appraiser, Joe Thompson, agrees with the valuation determined by Mr. Anderson, as evidenced by his endorsement of the Appraisal Award. A copy of Mr. Thompson's letter agreeing with the Appraisal Award is attached as Exhibit D.

39. Thus, pursuant to the terms of the Policy's Appraisal provision, two of the three appraisers (including the umpire) agree on the amount of the loss, and the Appraisal Award is binding upon Lexington.

40. On April 21, 2022, though not specifically required under the appraisal provision in the Policy, Loyalty submitted a revised proof of loss to Lexington in the amount of the Appraisal Award.

41. As of the date of filing of this Complaint, Lexington had not tendered payment of the Appraisal Award to Loyalty, nor had Lexington indicated its intent to do so.

42. Because the contractual limitations period expires on April 24, 2022, to preserve its right to enforce the Appraisal Award and out of an abundance of caution, Loyalty immediately filed this action to enforce the Appraisal Award.

## Count I – Breach of Contract

43. Loyalty incorporates by reference the allegations in paragraphs 1-42 of this Complaint as if set forth fully herein.

44. The Policy is a binding contract between Loyalty and Lexington.

45. Pursuant to the terms of the Policy, Lexington has a duty to pay Loyalty the full amount of the Appraisal Award.

46. To date, Lexington has not fulfilled its contractual duty to pay Loyalty the full amount of the Appraisal Award.

47. Thus, Lexington is in breach of its obligations under the Policy.

48. Loyalty has been injured by Lexington's breach of the Policy in an amount equal to the Appraisal Award, plus applicable pre-judgment and post-judgment interest.

49. To the extent Lexington does not promptly pay the Appraisal Award, its refusal to pay amounts owed to Loyalty under the Policy runs afoul of Virginia Code §38.2-209. As a result, Loyalty is entitled to recover its reasonable costs and attorneys' fees.

50. Further, Lexington is obligated to reimburse Loyalty for all costs it incurred associated with the Appraisal pursuant to Virginia Code §38.2-2105.

WHEREFORE, Loyalty respectfully requests that this Court enter judgment against Lexington Insurance Company in the amount of $ 1,953,759.67, plus prejudgment and post-judgment interest; order Lexington to reimburse Loyalty's costs associated with the appraisal

process; grant Loyalty an award of its reasonable costs and attorneys' fees pursuant to Virginia Code §38.2-209; and award any other relief that the Court deems appropriate.

                                Respectfully Submitted,

                                LOYALTY IMPORTS RICHMOND LLC d/b/a LOYALTY TOYOTA;
LOYALTY AUTOMOTIVE RICHMOND LLC d/b/a LOYALTY NISSAN;
and LOYALTY SALES RICHMOND LLC d/b/a LOYALTY VOLKSWAGEN;

                                By   s/ Harold E. Johnson
                                     Counsel

Harold E. Johnson (VSB #65591)
Williams Mullen
200 South 10th Street, Suite 1600 (23219)
PO Box 1320
Richmond, VA 23218-1320
Tel: (804) 420-6000
Fax: (804) 420-6507
Email: hjohnson@williamsmullen.com
*Counsel for Loyalty Imports Richmond LLC d/b/a Loyalty Toyota, et al.*

9